UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN MARTIN THOMAS,

    Petitioner,                              Case No. 2:19-CV-10767
                                                      Honorable Linda V. Parker

v.

SHANE JACKSON,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Melvin Martin Thomas ("Petitioner"), confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his conviction for first-degree criminal sexual conduct in violation of Michigan Compiled Laws § 750.520b. For the reasons that follow, the Court is denying his petition.

## I. Background

On July 22, 2016, a jury in Michigan's Wayne County Circuit Court convicted Petitioner of first-degree criminal sexual conduct. The trial court thereafter sentenced Petitioner to a term of imprisonment of fifty to eighty years.

1

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence, *People v. Thomas*, No. 335182, 2018 WL 1122052 (Mar. 1, 2018), and the Michigan Supreme Court denied him leave to appeal. *People v. Thomas*, 919 N.W.2d 398 (2018).

The Michigan Court of Appeals set forth the following relevant facts in its decision affirming Petitioner's conviction and sentence:

> This case arises out of the sexual assault of the victim on October 17, 1995. The victim, who was 21 years old at the time, was on her way to get dinner for her sick mother when she stopped at an ATM machine near the intersection of Outer Drive and Grand River in Detroit to withdraw cash for the meal. After withdrawing $60 from the ATM, the victim walked back to her car. She noticed two men approaching her, who were later identified as defendant and Lorenzo Anthony.
>
> According to the victim, as she quickly attempted to get her car door unlocked, Anthony got "really close," put "something hard" in her side, and said, "don't yell, don't move and give me the money," which caused the victim to believe she was being robbed. The victim gave Anthony everything she had, including her money and jewelry. The victim testified that defendant was also following close behind and was acting like a lookout. Anthony then ordered her to get into her car's front seat, which she did because she was scared and thought that he had a gun.
>
> According to the victim, defendant sat in the driver's seat, Anthony was in the passenger seat, and she was in between them. Defendant began driving the car while Anthony placed the victim in a headlock and began hitting her in the back of the head. Anthony told the victim to get in the back seat, and she complied. Anthony also got in the back seat while continuing to hit the victim and then forced her to perform oral sex on him. Defendant subsequently stopped the car, at which time Anthony vaginally penetrated the victim.

> Defendant and Anthony switched positions, with defendant now in the back seat. According to the victim, defendant first told her to get on her stomach. The victim could feel his penis near her anus, but he did not penetrate her at that time. The victim further testified that defendant instructed her to lie on her back, at which time he vaginally penetrated her. Defendant subsequently returned to the front seat with Anthony where, as it appeared to the victim, they divided the money and jewelry between them. According to the victim, both men got out of the car and left her in the back seat. The victim drove herself home where the police were called. The victim was then treated at Detroit Receiving Hospital, and a rape kit was used to recover DNA evidence.
>
> According to the victim, about a week after the incident, the police asked her to view a lineup; however, she was unable to identify Anthony or defendant. Twenty years later, the police contacted the victim, informing her that a DNA match had occurred relevant to her case; ultimately, the police showed her a photo array, in which she identified defendant.

*Thomas*, 2018 WL 1122052, at * 1. These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

On March 14, 2019, Petitioner filed the present habeas petition asserting the same grounds for relief that he asserted on direct appeal:

> I. The trial court erred when it denied Defendant-Appellant's motion for a mistrial.
>
> II. Defendant-Appellant is entitled to a new trial as he was denied effective assistance of counsel.
>
> III. Defendant-Appellant is entitled to be re-sentenced as his current sentence is contrary to Const. 1963, Art. 1, § 16, and his guidelines were incorrectly scored.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.*

5

Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Petitioner's Prosecutorial Misconduct/Mistrial Claim

Petitioner first claims that the prosecutor committed misconduct when she questioned Petitioner about a prior criminal sexual conduct case involving a minor and prior domestic assault cases. Petitioner argues that the trial judge erred in refusing to grant a mistrial after the prosecutor questioned Petitioner about these prior assaults, where the judge ruled before trial that the evidence was inadmissible under Michigan Rule of Evidence 404(b).

Petitioner identifies two instances where he claims the prosecutor improperly presented evidence about these prior bad acts. The first instance was as follows:

[Defendant]: I don't bash on women.

[Prosecutor]: Did you just say—I'm sorry. Did you just say you don't bash on women?

[Defendant]: No, I don't.

[Prosecutor]: What about the domestic violence report that was made by [NW]?

[Defendant]: That was false.

6

[Trial Court]: Let's move on.

[Defendant]: That was false. She was drunk.

[Trial Court]: Let's move on.

[Prosecutor]: What about the domestic violence report made by [SJ]?

[Defendant]: That was false, too. You show me the case.

[Prosecutor]: Okay. And when you say you wouldn't do that type of stuff that Mr. Anthony was doing in the back of the car, did you mean forcing yourself on women?

[Defendant]: I don't do that either.

[Prosecutor]: What about [MB]?

[Defendant]: I ain't do that either.

[Prosecutor]: You didn't attempt to rape her in the year 2000?

[Defendant]: No. I am not a rapist. I'm not a child molester. I'm not none of that. I work hard for everything I gets.

[Prosecutor]: So if that young lady told the police you tried to force your penis inside of her vagina when she was 14 years old—

[Trial Court]: Let's do this. Let's do this. Let's move on. Let's move on.

[Prosecutor]: Your Honor, the defendant has opened the door to this line of questioning.

[Trial Court]: I don't care. Let's move on. Let's move on.

(7/21/16 Trial Tr. at 101-02, ECF No. 8-10 at Pg ID. 902-03.)

The second exchange Petitioner challenges occurred later in the cross-examination:

[Defendant]: Yeah, I did. I said that I did. I did have sex with [the victim].

[Prosecutor]: You did?

[Defendant]: Wasn't no tension. Wasn't no force or no threat, none of that. I was threatened by my life by her.

[Prosecutor]: So she threatens your life, sir?

[Defendant]: Yeah. She the one who pulled my clothes off.

[Prosecutor]: How did she threaten your life?

[Defendant]: Because she put me in a situation I didn't want to be in. I was uncomfortable. I never experienced nothing like that in my life.

[Prosecutor]: You've never experienced nothing like that in your life?

[Defendant]: No.

[Prosecutor]: Not in the year 2000 with [MB]?

[Defendant]: No.

(7/21/16 Trial Tr. at 109-11, ECF No. 8-10 at Pg ID 910-11.) After this exchange, the trial court sustained defense counsel's objection to the line of questioning and warned the prosecutor not to continue with this line of questioning. (7/21/16 Trial Tr. at 110, ECF No. 8-10 at Pg ID 911.)

Defense counsel later moved for a mistrial, arguing that the prosecutor's questions about the prior sexual assault involving MB violated the trial judge's pre-trial order that such evidence was not admissible under Michigan Rule of Evidence 404(b). (*Id.* at 113-14, Pg ID 914-15.) The prosecutor responded that

8

Petitioner opened the door to such questions through his own testimony. (*Id.* at 114, Pg ID 915.) The trial judge denied the motion for mistrial, reasoning:

> In terms of what occurred during cross-examination or for that matter direct examination, I do find that the defendant made other sexual assaults relevant when he denied ever assaulting, sexually assaulting, any other women. Although the defendant made these lines of questioning relevant, I chose to exercise my discretion and limit questioning to the charged offense and the MRE 404(b) incident previously litigated.
>
> * * *
>
> Other than those two brief situations, there were no other references to the [MB] incident. I do not find that these two very brief references to the [MB] incident warrant a finding of manifest necessity requiring extreme remedy of declaring a mistrial because, as I mentioned, they were otherwise admissible.
>
> Further, even if those references were not otherwise admissible, the trial irregularity certainly does not deprive the defendant from having a fair trial.

(*Id.* at 116-17, Pg ID 917-18.) Nevertheless, the trial court provided the following curative instruction to the jury before the defense rested:

> Ladies and gentlemen, earlier today there was a reference to some sort of uncharged incident from 2000. I'm instructing you now that you are not to consider any reference whatsoever of the uncharged 2000 incident and it shall play no role whatsoever in your deliberations. All right? I see a lot of head nodding.

9

(*Id.* at 126-27, Pg ID 927-28.)  In its final instructions, the trial court also advised the jury that it should not consider any evidence that was excluded or stricken.  (*Id.* at 168, Pg ID 969.)

The Michigan Court of Appeals rejected Petitioner's prosecutorial misconduct/mistrial claim, reasoning:

> In this case, the occurrences of alleged misconduct involved defendant offering evidence of a pertinent trait of his own character; specifically, that he was not the kind of person who would "bash" or sexually assault women and that he had never been in such a situation before.
>
> MRE 405(a) allows inquiry during cross-examination into specific instances of conduct to rebut defendant's contention. MRE 608(b) also permits cross-examination inquiry into specific instances of conduct if, in the court's discretion, the inquiry is "probative of truthfulness or untruthfulness." The fact that the trial court had ruled that the prosecution could not introduce evidence of the MB incident in its case in chief under MRE 404(b) did not render that evidence inadmissible for all other purposes, such as the limited inquiry permitted by MRE 405(a) or MRE 608(b), because evidence that is inadmissible for one purpose may still be admissible for another proper purpose.
>
> It appears from the record that the prosecutor was attempting to challenge defendant's truthfulness related to his claim that he was not assaultive. Furthermore, there is nothing in the record to indicate that the prosecutor had an improper motive for inquiring into the specific acts. The prosecutor repeatedly argued that her questioning was proper, thus supporting the contention that she had a good-faith belief that the evidence she sought was admissible. In fact, as stated above, the trial court

10

> concurred that the prosecutor's questions were proper
> and would have elicited admissible testimony; however,
> the trial court exercised its discretion and discontinued
> the prosecutor's line of questioning. Therefore, because
> the prosecutor's questioning represented a good-faith
> effort to elicit admissible evidence, there was no
> prosecutorial misconduct.

*Thomas*, 2018 WL 1122052, at *4 (internal citations omitted). The Michigan Court of Appeals further ruled that the trial court's curative instruction, along with its final instruction, cured any prejudice to Petitioner. *Id.* at *4-5.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Even if the prosecutor's conduct was improper or even 'universally condemned,' [a habeas court] can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (quoting *DeChristoforo*, 416 U.S. at 642). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim " 'was so lacking in justification that there was an

11

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Although Michigan Rule of Evidence 404(b)—like its federal counterpart, Federal Rule of Evidence 404(b)—generally prohibits a prosecutor from questioning a defendant about prior bad acts, the United States Supreme Court has never held that the federal constitution forbids a prosecutor from doing so. As such, the Michigan courts' rejection of Petitioner's prosecutorial misconduct claim would not entitle petitioner to habeas relief. *See Wagner v. Klee*, 620 F. App'x. 375, 378 (6th Cir. 2015) (citing *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("[A]lthough Federal Rule of Evidence 404(b) generally bars a federal prosecutor from asking a defendant about prior bad acts, the Supreme Court has never held that the Constitution forbids a prosecutor from doing so.").

A trial court has the discretion to grant or deny a motion for mistrial in the absence of " 'a showing of manifest necessity.' " *United States v. Wiggins*, 784 F. App'x 919, 923 (6th Cir. 2019) (quoting *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994). In the present case, the prosecutor did not commit misconduct by asking Petitioner about his prior assaults, where Petitioner opened the door to such questioning by denying that he was an assaultive or violent person.

Moreover, the prosecutor's questions about Petitioner's prior assaultive behavior was not so prejudicial as to require a mistrial, particularly considering the trial court's immediate instruction to the jury that they were to disregard this information. *See United States v. Beamus,* 110 F. App'x. 513, 517 (6th Cir. 2004) (testimony that defendant was "on the run" from probation was not per se prejudicial, so as to warrant mistrial, where jury immediately told to disregard that single, isolated remark); *United States v. Harris*, 165 F. 3d 1062, 1066 (6th Cir. 1999) (police officer's allusion to defendant's prior arrest did not require a new trial since it was isolated and district court gave an immediate curative instruction); *United States v. Forrest*, 17 F. 3d 916, 920 (6th Cir. 1994) (court did not abuse its discretion in not granting defendant's motion for mistrial, though agent's statement regarding defendant's previous incarceration directly contravened judge's specific warning, where judge provided clear admonition). Moreover, not only did the trial court tell the jury to disregard "any reference" to prior uncharged conduct, the court further advised the jury during final instructions not to consider anything that had not been admitted into evidence. A jury is presumed to have followed a trial court's instructions. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000).

For these reasons, this Court holds that "fairminded jurists could [not] disagree" on the correctness of the Michigan court's resolution of Petitioner's prosecutorial misconduct and mistrial claim.

13

## B. Petitioner's ineffective assistance of counsel claim

Petitioner argues he was denied the effective assistance of trial counsel. To prevail on this claim, Petitioner must show that the state court's conclusion regarding this claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. The petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Id*.

Petitioner first claims that his trial counsel was ineffective for failing to call certain witnesses on his behalf. Aside from one possible character witness, *see infra,* Petitioner did not provide the Michigan courts (*See* ECF No. 8-13, 8-14), and has not provided this Court, affidavits from these alleged witnesses concerning their proposed testimony and willingness to testify on his behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). As Petitioner has offered no evidence, beyond his assertions, of what these witnesses would have testified to if they had been called as witnesses, he cannot show that he was prejudiced by his counsel's failure to present them at trial. *See Clark v. Waller*, 490 F.3d 551, 557-58 (6th Cir. 2007).

14

Petitioner did attach to his state appellate court brief an affidavit from Ms. Kizzie Parker, dated April 24, 2017. Petitioner also attached this affidavit to his present habeas petition. (ECF No. 1 at Pg ID 26.) In her affidavit, Ms. Parker states that she had a "brief relationship" with Petitioner and "could have testified that he was a nice guy, and he never did anything violent or inappropriate in my presence." (*Id.*) Petitioner argues that his trial counsel was ineffective in failing to call Mr. Parker as a character witness.

The Michigan Court of Appeals rejected Petitioner's claim, in part because Petitioner had not provided the trial court with the affidavit from Ms. Parker when he filed his motion for a *Ginther* hearing [1] on his ineffective assistance of counsel claim. The Michigan Court of Appeals ruled that Petitioner was improperly trying to expand the record by including Ms. Parker's affidavit for the first time before that court. *People v. Thomas*, 2018 WL 1122052, at *6. The Michigan Court of Appeals further held that the absence of Ms. Parker's testimony did not prejudice Petitioner because she was not present when the sexual assault occurred and therefore could not exculpate Petitioner as her "proposed testimony would not contradict the victim's detailed testimony about what defendant did to her." *Id.*

"A defense counsel has no obligation to call or even interview a witness whose testimony would have not exculpated the defendant." *Millender v. Adams*,

---

[1] *People v. Ginther*, 212 N.W. 2d 922 (Mich. 1973).

376 F.3d 520, 527 (6th Cir. 2004) (internal quotation marks and citation omitted). Ms. Parker's proposed testimony that Petitioner never acted violently or inappropriately in front of her would not have proven that he did not sexually assault the victim in this case. Therefore, Petitioner cannot demonstrate that his trial counsel's failure to call Ms. Parker as a witness constituted constitutionally defective assistance of counsel.

In an affidavit submitted in support of his direct appeal, Petitioner stated that his trial attorney did not ask the witnesses questions that he requested she ask. (ECF No. 1 at Pg ID 25.) Addressing this assertion as part of Petitioner's rejected ineffective assistance of counsel claim, the Michigan Court of Appeals noted that "defendant has not indicated what questions he asked trial counsel to pose to witnesses that were not actually asked." *Thomas*, 2018 WL 1122052, at *6. Petitioner has not elaborated on this claim, here. As such, he fails to show that his trial counsel was ineffective or that any ineffectiveness prejudiced his defense.

For these reasons, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

### C. Petitioner's sentencing claim

Petitioner challenges the correctness of his sentence. First, he challenges the scoring of several offense variables of the Michigan Sentencing Guidelines. This claim, however, is not cognizable on federal habeas review because it is basically a

16

state law claim. *See Tironi v. Birkett*, 252 F. App'x. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x. 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016).

Petitioner also argues that his sentence of fifty to eighty years was excessive and disproportionate. This claim also does not support his request for federal habeas relief. The United States Constitution does not require that sentences be proportionate. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (concluding that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence.) "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas,* 49 F.3d 253, 261 (6th Cir. 1995) (citations omitted). "[S]uccessful challenges to the proportionality of particular sentences [in non-capital cases are] exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* at 1001. "A sentence within the statutory maximum set by statute generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (brackets, internal quotation marks, and citations omitted). Petitioner's sentence of fifty to

17

eighty years in prison was within the statutory limits for the crime of first-degree criminal sexual conduct, which carries a maximum life sentence. The Court's analysis is not changed because the minimum sentence may exceed Petitioner's life expectancy. *See United States v. Beverly,* 369 F.3d 516, 537 (6th Cir. 2004) (citing *Harmelin*, 501 U.S. at 996) ("[T]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment.").

The Court concludes that Petitioner is not entitled to habeas relief on his third claim.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief. To appeal this decision, Petitioner first must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only if a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

To make this showing, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks and citation omitted). When a district court

rejects a habeas petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.

The Court denies Petitioner a certificate of appealability because reasonable jurists could not debate that his grounds for habeas relief lack merit. The Court also is denying Petitioner leave to appeal *in forma pauperis*, because any appeal would be frivolous. *See* 28 U.S.C. § 1915(a)(3).

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a Certificate of Appealability and leave to appeal *in forma pauperis*.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 7, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 7, 2020, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager